# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN K. BYRNES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-570 |
| | ) | |
| v. | ) | |
| | ) | |
| ALLAN K. MOODY, Correctional Officer; TIMOTHY A. LEWIS, Lieutenant; BRET JOHNSON, Correctional Officer; and JERRY BROWN, Sergeant, | ) ) ) ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | ECF No. 58 |
| Defendants. | ) | |

## MEMORANDUM OPINION

**LENIHAN, M.J.**

Presently before the Court is the Motion for Summary Judgment filed by Defendants Timothy A. Lewis, Bret Johnson, and Jerry Brown. (ECF No. 58.) For the reasons that follow, the Motion will be granted.

<u>RELEVANT FACTS</u>

The following facts are undisputed unless otherwise indicated and are taken from the parties' statements of material facts and responses thereto at ECF Nos. 60, and 70, and from other relevant portions of the summary judgment record. All Defendants move for summary judgment with the exception of Allan K. Moody.

The underlying events took place at the State Correctional Institution at Greene ("SCI-Greene"), a prison maintained and operated by the Pennsylvania Department of Corrections ("DOC"). (ECF Nos. 60 & 70, ¶ 1.) Plaintiff Brian K. Byrnes ("Plaintiff" or "Byrnes"), is an

inmate committed to the DOC. Plaintiff has been confined at several different State Correctional Institutions within the DOC. (ECF Nos. 60 & 70, ¶ 2.)

Relevant to the case at bar, Plaintiff was confined at SCI-Greene from May 2, 2013 until May 20, 2014. (ECF Nos. 60 & 70, ¶ 3.) On March 20, 2014, Plaintiff was confined in the Restricted Housing Unit ("RHU") at SCI-Greene, in Cell 1003, on B Pod, I-Block. (ECF Nos. 60 & 70, ¶ 4.) The RHU is comprised of several housing blocks and provides for closer custody of inmates in either Administrative Custody or Disciplinary Custody status. (ECF Nos. 60 & 70, ¶ 6.) I-Block is an inmate housing unit at SCI-Greene which is part of the RHU. (ECF Nos. 60 & 70, ¶ 5.) Within the RHU at SCI-Greene, the DOC operates a Security Threat Group Management Unit ("STGMU"). This unit is housed in I-Block. The STGMU contains individuals who have been identified through assessment as belonging to or being involved with a "Security Threat Group" or gang. The program provides a graduated or phased privilege – or "step down" – program to help prepare these inmates for successful reintegration into General Population once their disciplinary sanctions have been served. (ECF Nos. 60 & 70, ¶ 7.)

Moving Defendant Timothy A. Lewis ("Lt. Lewis") is employed as a Corrections Officer III (Lieutenant) at SCI-Greene. (ECF Nos. 60 & 70, ¶ 8.) In March 2014, Lt. Lewis was assigned as the Lieutenant for I-Block Housing Unit in the RHU for the 6:00 a.m. to 2:00 p.m. shift. (ECF Nos. 60 & 70, ¶ 9.)

Moving Defendant Jerry Brown ("Sgt. Brown") is employed as a Corrections Officer II (Sergeant) at SCI-Greene. (ECF Nos. 60 & 70, ¶ 10.) In 2014, Sgt. Brown was also assigned to I-Block Housing Unit for the 6:00 a.m. to 2:00 p.m. shift. (ECF Nos. 60 & 70, ¶ 11.)

Moving Defendant Bret Johnson ("CO Johnson") is employed as a Corrections Officer I (CO) at SCI-Greene. (ECF Nos. 60 & 70, ¶ 12.) In 2014 CO Johnson was assigned as a Rover

at SCI-Greene for the 6:00 a.m. to 2:00 p.m. shift. As a Rover, CO Johnson would be assigned on a daily basis wherever additional manpower was needed. These assignments included escorting inmates in the RHU. (ECF Nos. 60 & 70, ¶ 13.)

On February 28, 2014, Plaintiff was charged with, inter alia, Assault by Prisoner (18 Pa. C.S. § 2703) and Aggravated Assault (18 Pa. C.S. § 2702), based on an alleged assault by Plaintiff against a corrections officer at SCI-Greene. (ECF Nos. 60 & 70, ¶ 14.) During the incident underlying these charges, Plaintiff had kicked a corrections officer at SCI-Greene while Plaintiff was handcuffed. (ECF Nos. 60 & 70, ¶ 15.) A preliminary hearing was subsequently scheduled for March 20, 2014. (ECF Nos. 60 & 70, ¶ 16.)

On March 20, 2014, Plaintiff was confined in the RHU, Cell 1003, on B Pod, I-Block. (ECF Nos. 60 & 70, ¶ 17.) Co Johnson and Corrections Officer Allan K. Moody ("CO Moody") were assigned to prepare Plaintiff for transport to the Deputys' Complex at SCI-Greene for his preliminary hearing. (ECF Nos. 60 & 70, ¶ 18.) CO Johnson observed as CO Moody conducted a visual strip search of Plaintiff through the food aperture in Plaintiff's cell door and as CO Moody prepared to escort Plaintiff from his cell. (ECF Nos. 60 & 70, ¶ 19.) Plaintiff was handcuffed with his hands in front through the food aperture and then a waist belt was attached to the handcuffs and tossed through the food aperture, to be applied after the cell door opened. Plaintiff contends that the waist belt hit him when tossed and therefore, CO Moody did not have control of the waist belt. (ECF Nos. 60 & 70, ¶ 20.)

At this time Lt. Lewis and Sgt. Brown were present in the pod, within several feet of Plaintiff's cell. (ECF Nos. 60 & 70, ¶ 21.) The door was then opened electronically from a nearby control booth. Upon exiting the cell, Plaintiff immediately brought his hands up and struck CO Moody in the face. (ECF Nos. 60 & 70, ¶ 22.) Plaintiff gave no warning to the

officers prior to striking CO Moody. (ECF Nos. 60 & 70, ¶ 23.) CO Johnson and CO Moody reacted almost immediately by bringing Plaintiff down to the pod floor in front of his cell. Lt. Lewis also assisted in bringing Plaintiff to the floor. (ECF Nos. 60 & 70, ¶ 24.) Plaintiff did not indicate at this time that his assault on CO Moody was complete nor did he state that he only intended to strike CO Moody one time. (ECF Nos. 60 & 70, ¶ 25.) While Plaintiff was face down on the floor, Sgt. Brown joined in at or near Plaintiff's head and shoulders, while Lt. Lewis went to Plaintiff's lower body. (ECF Nos. 60 & 70, ¶ 26.) Plaintiff does not allege that any excessive force was used from the time he left his cell until after he was placed on the floor. (ECF Nos. 60 & 70, ¶ 27.) Then, Plaintiff states that "Officer Moody struck me four times total, as I remember; twice in the upper torso, twice in the face with his knee." (ECF Nos. 60 & 70, ¶ 28.) Plaintiff indicated that this happened very quickly, stating in his deposition as follows:

> Q. [Y]ou state, Defendant Moody stated, quote, you want to hit me in the face, Mother ---er, closed quote, and then punched the Plaintiff twice in the upper torso, neck region. Did I read that correctly?
>
> A. Yes.
>
> Q. And is that your recollection right after Officer Moody stated that is when he punched you twice in the upper torso?
>
> A. That's my recollection, yes, sir.
>
> Q. And you don't indicate that he said anything before he struck you in the head with his knee as you've alleged?
>
> A. Well, it was very fast, seconds later. It was said, two strikes to the body. And it was simultaneously, the posturing up and two strikes with the knee. It wasn't like it was a two-minute period between the hand strikes and knee strikes. They were almost back to back. So nothing was said in-between what he stated, his hand strikes. In between the hand strikes and the knees, I don't recall anything being said, no.

(ECF Nos. 60 & 70, ¶ 28.)

Plaintiff also states in his Amended Declaration that after CO Moody kneed him twice in the face, he turned his head from lying on its left side to its right side, to avoid any further knee strikes to his face. Thereafter, according to Plaintiff, CO Moody used his hand to attempt to shove his finger(s) in Plaintiff's left eye, so Plaintiff turned his head again. (Plaintiff's Amended Declaration, ECF No. 78, ¶¶ 16-19.) It was then that Plaintiff noticed that his face was "lying in a puddle of blood." (ECF No. 78, ¶ 19.) According to prison medical records, Plaintiff sustained a one fourth inch laceration to the tip of his nose requiring three stitches. (ECF No. 71-1 at 8-9.)

CO Johnson remained on Plaintiff's left side, near Plaintiff's head and shoulders. CO Johnson did not strike or punch Plaintiff, but placed his hands on Plaintiff to keep him from moving. (ECF Nos. 60 & 70, ¶ 29.)

After Plaintiff was taken to the floor, Sgt. Brown—who was 10 to 15 feet away—came over to where Plaintiff was on the floor. (ECF Nos. 60 & 70, ¶ 29.) Seconds later, Sgt. Brown went from near CO Moody at Plaintiff's head to retrieve a pair of leg shackles from near Plaintiff's cell door. (ECF Nos. 60 & 70, ¶ 31.) Sgt. Brown did not strike or punch Plaintiff, but initially placed his hands on Plaintiff's head and shoulders to keep him in place, and then moved to Plaintiff's legs and applied the shackles. (ECF Nos. 60 & 70, ¶ 32.)

Lt. Lewis did not strike or punch Plaintiff, but placed his hands on Plaintiff's legs and lower torso to keep him in place. (ECF Nos. 60 & 70, ¶ 34.) Plaintiff does not claim that he was "struck, punched, kicked or anything below [his] waist" or that he suffered any injury to his legs or below his waist as a result of this incident. (ECF Nos. 60 & 70, ¶ 35.) Plaintiff did not see Lt. Lewis, Sgt. Brown or CO Johnson strike him, and recalls only being struck four times, all by CO Moody. (ECF Nos. 60 & 70, ¶ 36.)

LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the pleadings, documents, electronically stored information, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a) & (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non- movant's burden of proof. *Id*. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc*., 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

In order for liability to attach for an Eighth Amendment violation under § 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002); *McCullough v. Miller*, No. 06-514, 2008 WL 4361254, at *9 (W.D. Pa. Sept. 24, 2008). In determining whether an opportunity to intervene existed, courts take into account many factors, "including the temporal length of the alleged assault, the proximity of the non intervening officer to the alleged assault,

the ability of the non intervening officer to perceive and/or hear the alleged assault, etc." *McCullough*, 2008 WL 4361254, at *9 (citing *Swinyer v. Cole,* No. C04-5348, 2006 WL 1874100, at *3 (W.D. Wash. July 6, 2006); *Mitchell v. James*, No. 4:04CV1068, 2006 WL 212214, at *5 (E.D. Mo. Jan. 27, 2006)).

Here, the moving Defendants argue they are entitled to judgment as a matter of law because the record reveals that none of them "had 'a realistic and reasonable opportunity to intervene' in the assault allegedly perpetrated by Defendant Moody." (ECF No. 59 at 5.) Plaintiff responds that there are disputed issues of material fact as to whether the moving Defendants had a realistic and reasonable opportunity to intervene in light of of their proximity to CO Moody, including whether they witnessed or otherwise perceived CO Moody's hand and knee strikes. (ECF No. 72 at 3-5). Plaintiff further directs the Court to discrepancies in various statements given by some of the moving Defendants. (ECF No. 72 at 5-7.)

The moving Defendants include a video in their submissions on summary judgment. (ECF No. 61-3.) The video depicts the events in question. At 14:09:59, the video depicts Plaintiff coming out of his cell and punching CO Moody in the face. Immediately thereafter, CO Moody and moving Defendants Johnson and Lewis bring Plaintiff to the ground. At 14:10: 03, the video depicts Defendant Brown as he approaches Plaintiff, and CO Moody delivering two hand strikes to Plaintiff's upper torso/neck area. At 14:10:14-15, CO Moody delivers two knee strikes to Plaintiff's face. The entire incident lasts no longer that 16 seconds, and Moody's alleged application of excessive force lasts no longer that 12 seconds.

This Court is guided by the directive of the United States Supreme Court that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

8

purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (relying on a videotape in assessing summary judgment evidence). The video here shows the uncertain, tense, and extremely rapid sequence of events. Although the moving Defendants were in close proximity to CO Moody and Plaintiff, the events unfolded so rapidly and with such uncertainty that the moving Defendants did not have a realistic or reasonable opportunity to intervene. That is, in the few seconds that elapsed between the time that Plaintiff was brought down to the floor after assaulting CO Moody, and CO Moody's sudden and rapid succession of two hand strikes followed by two knee strikes, the moving Defendants had no realistic opportunity to prevent them. Instead, the video depicts the moving Defendants focused on subduing Plaintiff after his initial assault on CO Moody and securing Plaintiff so he could not continue the assault on Moody or others. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) ("The three blows were struck in such rapid succession that [defendant] had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion than an officer who stood by without trying to assist the victim became a tacit collaborator."); *Ickes v. Borough of Bedford*, 807 F. Supp. 2d 306, 330 (W.D. Pa. 2011) (finding that given the quick sequence of events, no reasonable trier of fact could conclude that defendant had a realistic and reasonable opportunity to intervene when the events surrounding the arrest were too momentary to trigger defendant's duty to intervene); *La v. Hayducka*, 269 F. Supp. 2d 566, 581-82 (D.N.J. 2003) (finding that it was unrealistic to assume defendant had reasonable opportunity to intervene due to rapid nature of events and "tense and dangerous" situation).

Therefore, the Court finds that based upon the video evidence, no reasonable jury could find that moving Defendants Johnson, Lewis and Brown had "a realistic and reasonable

opportunity to intervene" in the alleged constitutional violation by Defendant CO Moody. *See Mensinger*, 293 F.3d at 651.

## CONCLUSION

For the above reasons, the Court will grant the moving Defendants' Motion for Summary Judgment. An appropriate Order will follow.

Dated: August 29, 2016

BY THE COURT

_____
Lisa Pupo Lenihan
UNITED STATES MAGISTRATE JUDGE

cc: Brian K. Byrnes
DZ-8707
SCI Forest
P.O. Box 945
Marienville, PA 16239

All counsel of record
Via electronic filing